## TREASURER OF INSANE HOSPITAL *versus* INHABITANTS OF BELGRADE.

The statute of 1847, c. 33, for the government of the insane hospital, gives authority to two justices of the peace, *quorum unus*, to decide upon questions of insanity when the selectmen shall have, upon a written complaint, refused or neglected to do so.

The jurisdiction of the justices is, therefore, dependent upon such refusal or neglect.

That jurisdiction is to be settled, *before* the justices have power to proceed, and it is to be settled by them alone, so far as relates to the person alleged to be insane.

In a suit by the hospital to recover the expenses of a person, committed as insane by such justices, their jurisdiction is established, by showing their adjudication that the selectmen had neglected to make examination after "a complaint" or after "an application" made to them "in writing."

To the maintenance of such a suit, it is not necessary to show that the defendants had notice of the proceedings before the justices.

A complaint in writing, made to the selectmen, by the wife of the person alleged to be insane, is a sufficient basis for their action; she being a *relative* within the intendment of the statute.

### ASSUMPSIT.

The plaintiff introduced an attested copy of the record of two justices of the peace and quorum. The record set forth an attested copy of a complaint made to them in 1850, on oath, by the father and the wife of Richmond H. Gould, of

Belgrade, representing that he was insane and dangerous, and that his comfort and that of others required him to be sent to the hospital; that an application had been previously made by said wife, to the selectmen of Belgrade, requesting them to examine into the matter of said Richmond's insanity, and that they had neglected to do so.

Also a copy of the warrant issued on said complaint by said justices, to the sheriff or his deputy, requiring him to bring said Richmond before them, that the matter of his insanity may be inquired of according to law ; also the return indorsed thereon by the deputy sheriff, that he had arrested said Richmond and brought him before said justices.

Also the adjudication of said justices as follows : —

" Richmond H. · Gould, of Belgrade, upon complaint of Nancy Gould, his wife, and Elihu Gould, his father, made to us 'that said Richmond H. Gould is an insane person and dangerous, and that his comfort and that of others requires that he should be sent to the insane hospital ; and that application was made several months since by the said Nancy, to the selectmen of Belgrade, aforesaid, requesting them to examine into the matter of said Richmond's insanity, but that they have unreasonably neglected so to do,' was brought before us, and examination was had by us into the subject matter of said complaint ; and it satisfactorily appearing to us the said justices, upon proof from the several witnesses, and from such testimony as was by us deemed proper, that said Richmond H. Gould is, and for some months past has been an insane and dangerous person ; and, that due application in writing had been previously made by the said Nancy to the selectmen of Belgrade, aforesaid, requesting them to examine into the matter of said Richmond H. Gould's insanity, and that they have unreasonably neglected so to do.

" It is therefore considered by us the said justices, that the said Richmond H. Gould is an insane and dangerous person. And we do further adjudge that in our opinion the said Richmond would be rendered more comfortable and safe to himself and others, by a residence in the insane hospital. And

Insane Hospital *v.* Belgrade.

that an order be issued under our hands, to send said insane person to the insane hospital, as provided in the statute relative to the same.

" Given under our hands the day and year aforesaid.

" Benja. A. G. Fuller, ⎫ *Justices of the*
" B. F. Chandler,  ⎬ *Peace and Quorum.*

" A true copy of judgment :

" *Attest :* B. A. G. Fuller, *Jus. Peace and quorum.*"

Also an attested copy of the warrant, under the hands of said justices addressed to the superintendent of the hospital, as follows : —

" You are hereby notified, that at an examination this day had before us, the subscribers, two justices of the peace and quorum, in and for said county, on complaint of Nancy Gould and Elihu Gould, that one Richmond H. Gould *is an insane* person, and would be more comfortable and safe to himself and others, by a residence in the insane hospital.

" We have decided that said Richmond H. Gould *is* an insane person, and that he would be rendered more comfortable and safe to himself and others by a residence in the hospital.

" We have, therefore, ordered the said Richmond H. Gould, committed to said hospital, and direct his detention in the same until he become of sound mind, or be otherwise legally discharged.

" And we do certify, that said Gould is a resident of Belgrade, in said county, and was there arrested."

It was admitted that the residence of Richmond was in Belgrade, and that he was received into the hospital in virtue of said warrant, and that the hospital incurred expenses for his board and clothing there. It is to recover for those expenses that this suit is brought.

Upon this evidence, the Judge directed a nonsuit, to which the plaintiff excepted.

*Fuller & Edwards*, for the plaintiff.

I. The right to maintain this action is found in the statute of 1847, relating to the insane hospital.

This statute was evidently framed, and intended by the

Legislature to relieve the hospital of all questions as to the formality of proceedings, and as to the settlement of the insane person, and to render the judgment of the magistrates final.  This appears from the following considerations : —

1.  The justices are in certain cases made the *appellate* court, who shall " hear and *determine all matters* brought before them" and give their "order," &c.   Stat. 1847, c. 33, § 9.

2.  No appeal from their decision is any where allowed, and the peculiar necessities of the case require that such decision should be final.

3.  Upon the refusal or neglect of the selectmen to examine, the two justices (quorum unus) shall inquire into, and *determine, both* as to the insanity as well as to *all other* matters touching the case.   Ib. § 10.

4.  The certificate (or order) of said justices " *shall be deemed sufficient evidence* to render such city or town liable for the expense of committing to and supporting in the insane hospital such insane person."   Ib. § 11.   It is therefore contended : —

II.  The certificate of the justices is conclusive and settles the only question which defendants here deny, the legal liability to the plaintiff.   The statute points out what the certificate shall contain, to which this certificate conforms, and is therefore final.

III.  The defendants cannot in this action object to irregularity in the proceedings.   This defence is not now open.

If any such irregularity exists, the only remedy is by *certiorari*.   They cannot be permitted, after the support has been furnished, to object to the payment upon such technical ground.

The justices are made the judges in " *all matters* touching the case."   This includes the sufficiency of the complaint, and their decision must stand till set aside upon *certiorari*. This is the only remedy in cases where no appeal lies.   12 Maine, 271, 235 and 210 ; 19 Maine, 46 ; 25 Maine, 69 ; 23 Maine, 9.

IV. The commitment was strictly legal.

1. No form of complaint is specified, and evidently no technicality is required. The statute was enacted to simplify proceedings.

2. It would be sufficient to allege in the words of the statute, ($ 10,) that " the selectmen had refused (or neglected) to examine," &c. The application would be matter of proof, *one* of the " matters" to be examined into by the justices.

The essential matter is the neglect or refusal. If the record finds this it is sufficient.

The record need *not* show that there had been application to selectmen in writing. This however does so show. 12 Maine, 271.

V. The case finds, *that* the person committed was insane ; *that* he had his residence in Belgrade ; and *that* the plaintiff furnished the items charged ; and the whole record shows that the selectmen had for a long time neglected to examine into the case, or to provide for his comfort and safety by sending him to the hospital, after application to them made in writing. This gives perfect right to a recovery.

*Morrell,* for the defendants.

The justices had no jurisdiction, and no authority to act.

Chap. 33, $ 8, Laws 1847, makes selectmen of towns a board of examiners in their several towns. To that board of examiners a complaint must be made *in writing.*

If they neglect or refuse to examine and decide, upon *such* a complaint, application may then be made to two justices of the peace, &c. $ 10.

The application said to have been made to the selectmen is not alleged to have been in writing, and it did not appear from the complaint made to the justices, that it was in writing. The justices, therefore, had no power to issue a warrant and to act in the premises.

It was the right of the town to have the complaint examined by the selectmen. The power of the justices was only appellate, and no appeal could lie till the selectmen had had an opportunity to investigate the matter. Such opportunity

they never had, because they could act only upon a written complaint, which of itself was to be the basis of all subsequent proceedings.

The complaint referred to in the justices' adjudication, was not made by any relative of the person said to be insane. It was by his wife only, and she is not a *relative*.

The statute requires the examination, when made by justices, to be in the town to be charged or in an adjoining town. That it was so done, should appear of record. But it does not appear. No jurisdiction therefore was shown.

The case fully shows that though the power of the justices was only appellate, they assumed and exercised a jurisdiction original and exclusive.

TENNEY, J. — The trustees of the insane hospital are authorized in the name of the treasurer to bring actions for the recovery of all debts due to the institution. Statutes of 1847, c. 33, § 2.

By the provisions of the 10th § of the same chapter of the statutes, "If the mayor and aldermen of any city, or the selectmen of any town shall refuse or neglect to examine and decide on any case of insanity, as required by § 8, two justices of the peace, one of whom shall be of the quorum, upon complaint made in writing by any relative of an insane person, or other individuals named, shall sit, and hear and decide on the case. And they are authorized and required, to call before them such testimony as they shall deem proper, and they shall inquire into, and determine, both as to the insanity, as well as to all other matters, touching the case, and upon being satisfied of the insanity of the person of whom examination is made, they shall so decide; and they have the power, if they deem the exercise of it expedient, by an order under their hands, to send said insane person to the hospital, and to certify the fact of the insanity, and also the city or town in which the insane person resided, was commorant, or found at the time of the arrest or examination; and shall direct the detention of such person, till restored, or otherwise legally discharged.

The jurisdiction of these two justices of the peace is dependent upon the refusal or neglect of the officers of cities or towns required to make the examination and decision of any case of insanity, referred to in the written complaint, as required by the 8th §. This question of jurisdiction must be settled before the two justices of the peace have power to proceed to examine the case of insanity presented. Their adjudication after they have assumed jurisdiction is made final against the person, supposed to be insane, even to the restraint of personal liberty, there being no provision for an appeal. It follows that the jurisdiction, of those who make this final decision upon the question of insanity, and other questions embraced, is finally settled before they enter upon the merits of the complaint. No other tribunal, excepting the justices of the peace, to whom the complaint is presented, having any authority by the statute to settle the point of jurisdiction, either originally or by appeal, it follows of necessity, that if they entertain jurisdiction, they decide that question conclusively, so far as it regards the person, who is the subject of the examination. And the power to do so, is likewise expressly given to them, in the language of the statute, which is, "they shall inquire into and determine both as to the insanity, as well as to all other matters touching the case."

Such being the power of the justices of the peace, under the 10th §, the documents and other evidence before them upon the question of jurisdiction, need not be specified. The provision of the statute, which we are considering, being based upon the refusal or neglect of a tribunal authorized in the first instance to make an examination, no record, as in the case of an adjudication, exists, and no copies can be certified. There is supposed to be no document of any description, excepting the complaint; and this may not be accessible; and the refusal or neglect must be shown ordinarily by parole. It is sufficient if the justices of the peace certify that a complaint had been made in writing to the selectmen of Belgrade, requesting them to examine the matter of the person supposed to be insane, and that they have neglected so to do. In this case, the justices of the peace have stated in

their certificate, among other things, "that due *application* in writing had been previously made by said Nancy [wife of the insane person] to the selectmen of Belgrade aforesaid, requesting them to examine into the matter of said Richmond H. Gould's insanity, and that they have unreasonably neglected so to do." And when it is considered, that the justices of the peace took jurisdiction, and made a final decision of the matter, having certified that due application in writing had been proviously made," &c., it cannot be doubted that they intended to use the term "due application" as synonymous with the word "complaint" as used in the statute.

It is objected that the complaint originally presented to the selectmen of Belgrade, was not signed in the manner required by the statute, it being signed by the wife of the person, supposed to be insane. If the term "relative" of a man, does not in its literal signification embrace the wife, it would be difficult to believe, that the Legislature intended that selectmen should be prohibited from giving heed to the complaint of the wife, when designed to promote the good of the husband, his family and the community at large. But it cannot be doubted that the wife sustains a *relation* to the husband, and by the strictest rules of literal construction, she is his relative, although for many purposes the rules of law make them identical. On this point also, the decision of the justices must be treated as conclusive.

The certificate given by the two justices of the peace in this case, is made equally binding upon the insane person, and the city or town, in which he resided, was commorant or found at the time of the original arrest and examination. Same chapter, 11th section.

It is insisted, that the defendants are not liable because they had no notice of the pendency of the complaint, upon which the final decision was made. The statute requires no such notice, and it was obviously the design of the legislature to dispense with it. The principal municipal officers of cities and towns, in all cases, are made the board of examiners upon questions of insanity, presented under the statute, c. 33, § 8,

of 1852. Upon their decision an appeal lies to a tribunal consisting of two justices of the peace and the quorum. One of these justices, such officers have the privilege of appointing. Having once refused or neglected to enter upon the examination, no provision for a notice to appear before those whose authority arises from their own refusal or neglect could be useful. *Exceptions sustained, new trial granted.*

SHEPLEY, C. J., and HOWARD and APPLETON, J. J., concurred.